**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER FOGERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-1504 RHH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jennifer Fogerty's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 24.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's denial of Fogerty's application.

**I.     Background**

The Court adopts the statement of facts set forth in Fogerty's statement of facts (ECF No. 21-1) and Defendant's response with additional facts (ECF No. 22-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

On October 7, 2019, Fogerty applied for DIB and SSI, alleging that she had been unable to work due to disability since July 24, 2018. (Tr. 14, 225.) Fogerty alleged disability due to post-traumatic stress disorder, traumatic brain injury with long-term issues, depression, anxiety, fibromyalgia, and arthritis. (Tr. 84.) Her application was initially denied and she filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 116, 131-132.) On March 8, 2021, the ALJ held a hearing on Fogerty's claim. (Tr. 35-59.) Fogerty was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on April 9, 2021, the ALJ found Fogerty was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 23.) On April 21, 2021, Fogerty filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 222-224.) On October 29, 2021, the Appeals Council denied Fogerty's request for review, and adopted the ALJ's decision in full. (Tr. 1-5.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.   The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Fogerty met the insured status requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since July 24, 2018, the alleged onset date. (Tr. 16.) Next, the ALJ found that Fogerty has the following severe impairments: depression, anxiety, post-traumatic stress disorder, degenerative disc disease/cervical spondylitis, cervical radiculopathy, and obesity. (Tr. 16.) The ALJ found that Fogerty's asthma is not a severe impairment. (Tr. 17.)

The ALJ determined that Fogerty did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Fogerty had the residual functional capacity to perform light work with additional limitations. Specifically, the ALJ found that

> she may occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance (as defined by the DOT), stoop, kneel, crouch, and crawl. She cannot be exposed to unprotected heights and hazardous machinery and can have only occasional exposure to extreme temperatures or vibrations. She is limited to simple routine repetitive tasks. She has sufficient concentration to persist in the performance of such tasks at a reasonable rate with standard breaks, few changes in work setting, simple work related judgments, and only occasional interactions with supervisors, coworkers, and the general public.

(Tr. 19.) The ALJ found that Fogerty was unable to perform any past relevant work. (Tr. 22.) Fogerty was 38 years old on the alleged disability onset date and considered a younger individual age 18-49. She has at least a high school education. The ALJ determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. (Tr. 22.) Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national economy that Fogerty can perform, including packer (Dictionary of Occupational Titles (DOT) No. 920.685-026, light exertion level, approximately 72,000 jobs in the national economy), assembler (DOT No. 794.687-042, light exertion level, approximately 55,000 jobs in the national economy), and product inspector (DOT No. 529.687-186, light exertion level, approximately 63,000 jobs in the national economy). (Tr. 22-23.) Therefore, the ALJ concluded that Fogerty was not disabled, as defined in the Act, from July 24, 2018, through April 9, 2021. (Tr. 23.)

4

**IV.     Standard for Judicial Review**

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings,

5

the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.  Discussion

Fogerty challenges the ALJ's opinion in three ways. First, Fogerty contends that the ALJ failed to support the RFC with medical evidence. Second, Fogerty contends the ALJ failed to properly evaluate the opinion evidence of Dr. Gestring and Dr. Blattner. Third, Fogerty contends that the ALJ failed to property evaluate Fogerty's subjective pain.

### A.  Evaluation of Physical RFC

Fogerty first argues that the ALJ failed to support the physical RFC with medical evidence. Specifically, she contends that the ALJ erred by not ordering a consultative exam or requesting a medical expert to provide an opinion as to Fogerty's physical RFC during the relevant time.

An ALJ must formulate a claimant's residual functional capacity based on all the relevant, credible evidence of record. *Cox v. Astrue,* 495 F.3d 614 619 (8th Cir. 2007). When a "crucial issue is undeveloped" and the evidence is not sufficient to allow the ALJ to form an opinion, the ALJ has a duty to develop the record. *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Where other evidence in the record provides a sufficient basis for an ALJ's decision, then an ALJ "is permitted to issue a decision without obtaining additional medical evidence." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (internal quotation marks and citation omitted). An ALJ's duty to develop the record is not never-ending. *McCoy*, 648 F.3d at 612.

6

In discussing Fogerty's physical impairments, the ALJ noted that there are limited records regarding treatment for her physical symptoms since she was found not disabled on July 23, 2018.[1] Her medical records related to treating physical impairments are from Olympic Rehab Wellness and Pain Center. (Tr. 339-384, 395-406, 437-441.) The ALJ explained that Fogerty complained of neck and lower back pain, which was worse with motion and better with therapy and medication. She told the pain management specialist that she is unable to work because of her pain. She reported exacerbation of her back pain with prolonged sitting, standing, and walking. The ALJ further explained that Fogerty's gait was sometimes described as antalgic, and other times described as stable and steady. As to her fibromyalgia, her records indicate a trigger point or points, but there is no record of where they are or how many there are and there is no evidence of trigger point testing to support the diagnosis of fibromyalgia, before or after July 23, 2018. (Tr. 20.)  The ALJ noted that  Fogerty was counseled about weight management, was prescribed pain medications, and advised to do daily stretching, apply heat and ice, and lose weight. (*Id.*) The ALJ also reported that the records reflect Fogerty reported she was without insurance and unable to get an MRI or steroid injections for that reason. The ALJ explained that she considered these findings and Fogerty's severe physical impairments in determining Fogerty's RFC was for light work with additional limitations. (*Id.*)

Here, I find that the substantial evidence in the record provides sufficient information to allow the ALJ to decide Fogerty's physical limitations. Importantly, when Fogerty's attorney presented her disability claim to the ALJ at her hearing in 2021, Fogerty and her attorney made no

---

[1] On March 10, 2020, District Judge Audrey Fleissig affirmed the 2018 finding that Fogerty was not disabled. There, the ALJ determined that Fogerty had the RFC to perform light work with additional restrictions . On appeal, Fogerty took issue with the ALJ's findings related to her mental impairments, and "Plaintiff d[id] not challenge the ALJ's findings with respect to her physical conditions." *Fogerty v. Saul*, No. 4:19-CV-00636-AGF, 2020 WL 1158110, at *2 (E.D. Mo. Mar. 10, 2020).

mention of her physical impairments or their impact on her ability to return to work. (Tr. 36-59.) The discussion and her testimony was limited to her mental impairments. Fogerty's counsel explained that the reason she filed a new claim was because of new evidence from a new treating source, Dr. Blattner, who provided a Medical Source Statement. (Tr. 39.) When the ALJ asked Fogerty what was different between now and the previous denial of her disability claim, Fogerty explained that "[t]hings have just gotten harder for me" and "I struggle to process things." (Tr. 45.) She discussed her stress and anxiety, but does not identify her physical impairments as having changed before and after her alleged onset date. (*Id.*) Her function report reflects a similar narrative—that her issues lie in her ability to focus and manage stress. *See infra.*

With respect to the medical evidence, Fogerty's records establish that she reported some neck and back pain, and that the pain was worse with sitting and walking for prolonged time periods, but that it was improved with medication and therapy. She also reported that the pain was constant and she had been on pain medication to manage it "for years" before the alleged onset date. Despite often having normal range of motion on exams and conservative treatment during the relevant time period, the ALJ limited Fogerty to light work with additional postural and environmental limitations, which imposes a significant limitation in itself, demonstrating that the ALJ considered her physical limitations in making the RFC determination. *See Choate v. Barnhart,* 457 F.3d 865, 869–70 (8th Cir. 2006) (restriction to light work with environmental restrictions considered to be significant limitation); *see also Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir. 1995)).

As indicated above, substantial evidence supports the ALJ's physical RFC determination. The ALJ properly analyzed the medical and non-medical evidence pertaining to Fogerty's physical

8

impairments and acknowledged that Fogerty has some limitations. Fogerty has not offered any arguments or evidence demonstrating that additional physical restrictions are warranted. Where, as here, the RFC is supported by substantial evidence on the record as a whole, the ALJ was not required to obtain a consultative examination or a doctor's opinion to determine plaintiff's work-related limitations. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (ALJ not required to seek additional information from treating physicians or order consultative examination where medical record is adequately developed); *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ required to supplement record only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

B. **Evaluation of Mental RFC & Medical Opinions**

Next, Fogerty argues that the ALJ failed to support the mental RFC with medical evidence. She contends that instead of relying on supporting medical evidence, the ALJ formed her own opinion about how "moderate" limitations in various areas of mental health affect Fogerty's ability to function in the workplace. (Tr. 6.) Fogerty further argues that the ALJ failed to properly evaluate the opinion evidence from treating physicians.

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 416.920c(a)-(c) (2017). ALJs must explain how they considered the factors of supportability and consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. § 416.920c(b) (2017).

9

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D.N.Y. July 26, 2022).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021)).

Here, the record contains opinion evidence from two treating physicians, Dr. Gestring and Dr. Blattner. Both physicians completed a form supplied by Fogerty's counsel titled "Medical Source Statement – Mental." Fogerty is critical of the ALJ's assessment of both providers' opinions.

### **Dr. Gestring**

First, Fogerty's psychiatrist, Dr. Gestring, completed the medical source statement and dated it for August 20, 2020. (Tr. 407-410.) Dr. Gestring stated Fogerty's diagnosis was major depressive disorder, anxiety, ADHD, and PTSD based on Fogerty's anxiety, depression, irritability, hyperactivity, mood swings, outbursts, insomnia, and panic attacks. (Tr. 410.) When

10

asked why she may have difficulty working at any job on a full time sustained basis, Dr. Gestring stated "due to the severity of the symptoms, she may be unable to function occupationally and socially." (Tr. 410.) The form provided check box options categorizing limitations as "No problems," "Moderate interference," or "Marked interference."  For concentration, persistence, and pace, Dr. Gestring checked moderate interference and that in an 8 hour workday, Fogerty's overall pace of production would be 6-10% below average. He opined that she had no limitation in her ability to initiate and complete tasks in a timely manner, and had moderate limitations in her ability to ignore or avoid distractions or sustain ordinary routine and regular attendance. (Tr. 407.) For understand, remember, or apply information, Dr. Gestring checked the box that Fogerty had moderate limitation in her ability to follow one or two step oral instructions to carry out a task, and no limitations in her ability to use reason and judgment to make work related decisions and to understand and learn terms, instructions and procedures. For adapt or manage oneself, Dr. Gestring found no limitation in her ability to function independently; distinguish between acceptable and unacceptable work performance; and regulate emotions, control behavior and maintain wellbeing in a work setting. (Tr. 408.) Dr. Gestring found moderate limitation in her ability to work a full day without needing more than the allotted number of length of rest periods. For interact with others, Dr. Gestring found no limitation in her ability to ask simple questions or request help; keep social interactions free of excessive irritability, argumentativeness, sensitivity or suspiciousness; or maintain socially acceptable behavior. He found moderate limitation in her ability to respond appropriately to requests, criticism, suggestions, correction and challenges. (Tr. 408.)

      Dr. Gestring opined that Fogerty would have no significant limitation in interacting with coworkers, supervisors, or the general public on a sustained basis. (Tr. 408-409.) He found she

11

would be late to work or need to leave early once a month because of her depressive symptoms, anxiety, insomnia, and outbursts. (Tr. 409.)

    The ALJ found:

> The opinion of the claimant's psychiatrist dated August 20, 2020 is not persuasive.[2] He found no more than moderate limitations in the "paragraph B" criteria, which would indicate she has the capacity to perform unskilled work. This is consistent with the mental status examinations as discussed above, as well as the comments indicating the capacity to adapt and manage herself, as discussed above. To this extent, the opinion is consistent with his treatment notes and, therefore, persuasive. However, he then stated that, due to the severity of her symptoms, she may be unable to function occupationally, which is inconsistent with his prior assessments and the record as a whole. (Exhibits B8F & B9F)

(Tr. 21.)

    Fogerty contends that the ALJ failed to discuss supportability and gave an inadequate explanation in discussing consistency. The undersigned disagrees. As to the supportability factor, the ALJ determined that Dr. Gestring's "no more than moderate" limitations were consistent with Fogerty's mental status examinations and that to this extent, Dr. Gestring's opinion is consistent with his treatment notes. (Tr. 21.) The ALJ explained that although Fogerty alleges she has been doing much worse psychologically since the prior decision, it is not supported by Dr. Gestring's treatment notes, which reflect that during mental status exams Fogerty reported she was doing the same or better, or "fair" or "ok," and at no point did she report acute or debilitating psychological problems. (Tr. 20-21.) *See also Starman v. Kijakazi,* No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (When discussing supportability, ALJs can consider whether the physician's own treatment notes support the physician's opinion).

---

[2] Both parties suggest that referring to the opinion as "not persuasive" was a typo on the part of the ALJ. Fogerty states "this appears to be a mistake and is meant to say 'persuasive.'" (ECF No. 21 at 4.) The Commissioner states the ALJ "reasonably found the opinion of Dr. Gestring only partially persuasive." (ECF No. 22 at 11.) In light of the ALJ's explanation as to the weight given to the opinion, the undersigned agrees with the parties that the ALJ's initial statement that Dr. Gestring's opinion was "not persuasive" was a mistake. Because the ALJ provided additional explanation and appeared to give weight to the opinion in accordance with his evaluation of the opinion, I find the error to be harmless.

12

As to the consistency factor, the ALJ found part of Dr. Gestring's opinion to be not persuasive because the opinion that she may not be able to function occupationally due to the severity of her symptoms is inconsistent with the record as a whole. (Tr. 21.) Fogerty argues that in discussing consistency, the ALJ was selective in identifying mental status exams and failed to discuss how "the other mental status findings listed in the preceding paragraph [of Fogerty's brief]" affect the RFC. The "other mental status findings" referenced in Fogerty's brief are not medical records reflecting mental status exams; rather, Fogerty cites to her Function Report, in which she reports that she often starts things and struggles to finish them, has difficulty with motivation and forgetfulness, and that she in general has trouble trusting people and has bad anxiety that prevents most social activities. (ECF No. 21 at 13 (citing Tr. 262-272.)) While some information in the function report could certainly support more serious limitations, the ALJ explained that Fogerty's statements concerning the intensity, persistence and limiting effects of her reported symptoms are not supported by the medical evidence. (Tr. 21.) Therefore, after review, the Court finds that the ALJ's evaluation of Dr. Gestring's opinion is consistent with the regulations and is supported by substantial evidence.

### Dr. Blattner

Second, Fogerty's psychologist, Dr. Blattner, completed the medial source statement form and dated it for August 24, 2020. (Tr. 389-393.) Dr. Blattner stated Fogerty's diagnosis was anxiety disorder, based on "disfunction due to former husband's shaming of her children." (Tr. 392.) When asked why she may have difficulty working at any job on a full time sustained basis, Dr. Blattner stated "she cannot physically leave her young children." (Tr. 392.) For concentration, persistence, and pace, Dr. Blattner checked the box for marked interference and that in an 8 hour workday, Fogerty's overall pace of production would be 31% or more below average. (Tr. 389.) For

understand, remember or apply information, Dr. Blattner checked the box that Fogerty had moderate limitation in her ability to follow one or two step oral instructions to carry out a task, and marked limitations in her ability to use reason and judgment to make work related decisions and to understand and learn terms, instructions and procedures. For adapt or manage oneself, Dr. Blattner found a marked limitation in her ability to function independently; work a full day without needing more than the allotted number of length of rest periods; distinguish between acceptable and unacceptable work performance; and regulate emotions, control behavior and maintain wellbeing in a work setting. (Tr. 390.) For interact with others, Dr. Blattner found a moderate limitation in her ability to ask simple questions or request help, and marked limitation in her ability to keep social interactions free of excessive irritability, argumentativeness, sensitivity or suspiciousness; maintain socially acceptable behavior; and respond appropriately to requests, criticism, suggestions, correction and challenges. When asked how well she could interact with coworkers on a sustained basis, Dr. Blattner found she could not perform in proximity to coworkers without being distracted or distracting. (Tr. 390-91.) Dr. Blattner found she could not consistently perform for supervisors without exhibiting insubordinate behavior in response to supervision. (Tr. 391.) He found she could not perform in a setting with any contact with the general public. He found she would be late to work or need to leave early three times a month or more, and would miss days of work three times a month because of "anxiety due to children's behavior due to father." (Tr. 391.)

      The ALJ found Dr. Blattner's opinion is not persuasive. The ALJ noted Dr. Blattner found marked impairment in all areas of the paragraph B criteria, and the ALJ determined that

> [Dr. Blattner's] assessment is not supported by the very limited treatment notes supplied or the record as a whole. He indicated the claimant was unable to work because she could not leave her "young children." Not only is that irrelevant to the

14

> determination of disability, the claimant's children were 12 and 15 years old on the date of the hearing. (Exhibit B5F)

(Tr. 21-22.)

Fogerty contends that the ALJ erred in failing to discuss or consider the consistency factor. (ECF No. 21 at 14.) Fogerty also argues that the ALJ fails to mention or discuss supportability or how it was considered. (*Id.* at 10.) The undersigned disagrees. In articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, or did or did not provide a detailed explanation for the opinion. *Starman,* 2021 WL 4459729, at *4 (collecting cases). Here, the ALJ addressed supportability by noting that Dr. Blattner's opinion was not supported by the very limited treatment notes he provided. (Tr. 21-22.) The ALJ noted that Fogerty began treatment with Dr. Blattner after her psychiatrist told her she needed a therapist, and that the record contains a letter from Dr. Blattner indicating he was treating Fogerty for anxiety related to family issues concerning her ex-husband and children, and that she had eight appointments between February and June 2020. (Tr. 21.) The ALJ also noted the record "includes handwritten, brief summaries of appointments" from April 21, 2020, through January 12, 2021, and that the brief summaries "do not include any assessments, such as mental status examinations." (Tr. 21.) The ALJ sufficiently discussed supportability.

The ALJ also considered the consistency factor. While he did not use the word "consistency," the ALJ explained that Dr. Blattner's assessment was not supported by the record as a whole. In other words, the ALJ found Dr. Blattner's opinion inconsistent with other medical evidence in the record. The ALJ specifically cites that Dr. Blattner stated Fogerty may have difficulty working any job on a full time basis because "she cannot physically leave her young children." (Tr. 22, 392.) The ALJ found this irrelevant to the determination of disability, and

15

further discounted the opinion because the ALJ determined that to consider them "young children" was inconsistent with the evidence in the record that Fogerty's children were 12 and 15 on the date of the hearing. (Tr. 22, 39-40.)

Moreover, Dr. Blattner's opinion also ran contrary to an opinion which the ALJ gave more weight—Dr. Gestring's opinion. For example, while Dr. Blattner found Fogerty had "marked" limitations in every area of functioning, Dr. Gestring found that Fogerty had "none" or "moderate" limitations in each area. While Dr. Blattner found that Fogerty could not perform in a setting where she had to interact with coworkers, supervisors, or the general public, Dr. Gestring found that Fogerty had no significant limitation in any of these respects, and could interact normally with coworkers, supervisors, and the general public. While Dr. Blattner found Fogerty would need to be late to work, leave early, or miss work three times or more a month, Dr. Gestring opined Fogerty would need to be late, leave, or miss work only once a month. The Court finds that the ALJ's evaluation of Dr. Blattner's opinion is consistent with the regulations and is supported by substantial evidence.

Although Fogerty focuses her arguments on evaluation of the medical opinions, she also contends that the mental RFC is not supported by the evidence. In light of the discussion above and after a careful review of the record, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. The ALJ's decision to give more weight to Dr. Gestring's opinion than Dr. Blattner's opinion was reasonable. "Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted). To the extent that the ALJ did not take into account Dr. Gestring's

16

opinion that Fogerty may not be able to function occupationally due to the severity of her symptoms, her reason for doing so was consistent with the relevant regulations and supported by the record. It was reasonable for the ALJ to discount an opinion that was never mentioned in the treatment records and was not supported by the limitation levels identified by Dr. Gestring throughout his medical source statement. *See, e.g., Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) ("[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes."); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone," "were never mentioned in [the physician's] numerous records of treatment," and were not "supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

Importantly, the Court notes that the ALJ included several significant mental limitations in the RFC. It appears that the ALJ accommodated Fogerty's anxiety, stress, and issues with concentration and memory by limiting her to performing "simple routine repetitive tasks" and limiting her to perform such tasks "at a reasonable rate with standard breaks, few changes in work setting, simple work related judgments, and only occasional interactions with supervisors, coworkers, and the general public." (Tr. 19.)  *See, e.g., Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (hypothetical concerning a claimant who is capable of doing simple, repetitive, routine tasks adequately captured the individual's deficiencies in concentration, persistence or pace); *King v. Berryhill*, No. 1:18-CV-23 NCC, 2019 WL 1200334, at *5-6 (E.D. Mo. Mar. 14, 2019) (RFC limitation to "unskilled, simple, routine work" appropriately accommodated the plaintiff's moderate limitations in concentration and attention); *Fleming v. Colvin*, No. 4:15-CV-1150 SPM, 2016 WL 4493683, at *8 (E.D. Mo. Aug. 26, 2016) (RFC addressed the plaintiff's

17

concentration deficit by limiting the plaintiff to "simple, repetitive tasks," "only occasional interaction with supervisors, co-workers and the public," and work "which does not require close attention to detail"). To the extent that the ALJ did not find Fogerty's impairments would impose additional mental limitations, that conclusion was supported by substantial evidence, including medical evidence. The ALJ reasonably found the relatively normal objective findings undermined Fogerty's allegations that she had symptoms so severe that she would be incapable of even the limited range of work set forth in the RFC. *See, e.g., Halverson v. Astrue,* 600 F.3d 922, 931-33 (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings). It is not the role of this Court to reweigh the evidence. The ALJ's assessment of the medical opinions and the RFC determination were supported by substantial evidence, and the Court cannot say that the ALJ's determinations were outside the "available zone of choice." *See Hacker v. Barnhart,* 459 F.3d 934, 937-38 (8th Cir. 2006).

    **C.**    **Evaluation of Subjective Complaints**

Next, Fogerty contends that the ALJ did not properly evaluate her subjective complaints of pain. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
> (3) Any precipitating or aggravating factors;
> (4) The dosage, effectiveness, and side effects of any medication; and
> (5) The claimant's functional restrictions.

*Polaski v. Heckler,* 725 F.2d 1320, 1322 (8th Cir. 1984). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors before discounting a claimant's subjective

complaints. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

"After careful consideration of the evidence," the ALJ concluded that Fogerty's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 20.) Prior to this statement, and consistent with the Eighth Circuit's requirements, the ALJ recognized her obligation to assess Fogerty's symptoms based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p. (Tr. 19.) *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (citation omitted) (recognizing 20 C.F.R. § 404.1529 "largely mirror[s] the *Polaski* factors").

Here, Fogerty challenges the ALJ's decision by arguing that it fails to explain any specific inconsistencies in Fogerty's activities of daily living or in the medical evidence. The Commissioner asserts that the decision is supported by substantial evidence.

The Court finds that the ALJ appropriately discounted Fogerty's subjective complaints based on the objective medical evidence. The ALJ explained that her subjective complaints were taken into account, but "her complaints of incapacitating physical symptoms and overwhelming mental illness are inconsistent with the medical evidence and her activities of daily living." (Tr. 21.) The ALJ noted that Fogerty's function report reflects that Fogerty goes shopping, goes to her kids' schools, visits her parents, and attends doctor's appointments on a regular basis. (Tr. 20.) She also drives to run errands, but only when she needs to. (*Id.*) Despite checking the boxes for 15 of the 19 options for items that her illness, injuries, or conditions affect, Fogerty reports that she can

19

take care of her children, pets, clean, drive, go shopping, and generally care for herself. (Tr. 263-268.) The Eighth Circuit has held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citation omitted); *see also Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) (acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain and reflect negatively upon the claimant's credibility and ALJ can consider that an impairment is being controlled with medication to determine credibility). The ALJ's findings regarding the limitations caused by pain are supported by substantial evidence in the record as a whole.

## VI. Conclusion

Having reviewed the entire record, the Court finds that the ALJ made a proper RFC determination based on a fully and fairly developed record. Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (Docs. 1, 21.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 4th day of May, 2023.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE